**Harty Estate**

*Marvin L. Portney,* for estate.
*John J. Kerrigan Jr.,* for Aurora C. Harty.

SOKOLOVE, *J.,* September 6, 1989 — William Edward Harty Jr., the executor of the estate of his late father, William E. Harty, has filed a petition for declaratory judgment pursuant to 42 Pa.C.S. §7535 for direction in the administration of the estate. The executor has asked us to make the following determinations: (1) Whether the decedent's widow, Aurora C. Harty, was a slayer under 20 Pa.C.S. §§8801 et seq. and, therefore, prohibited from benefiting from decedent's death; (2) If the widow is deemed to be a slayer, whether certain trusts created by the decedent become nullities; (3) If the trusts are nullities, whether all of decedent's assets should be administered by the executor; and (4) How the real estate which was owned by the decedent and his widow as tenants by the entireties should be treated. Because the practice and procedure for a declaratory judgment follows the rules governing an action in equity, Pa.R.C.P. 1601(a), we enter this adjudication.

## FINDINGS OF FACT

(1) William E. Harty died on February 12, 1987 as the result of stab wounds inflicted by his wife, Aurora C. Harty.

(2) Decedent was survived by his wife, Aurora C. Harty, and three sons, William Edward Harty Jr., Christopher Harty and Richard Harty, all of whom are adults.

(3) Decedent died testate, and his will, dated September 20, 1982, was admitted to probate before the Register of Wills of Bucks County, Pennsylvania, on March 2, 1987.

(4) In accordance with decedent's will, William Edward Harty Jr. was appointed executor of decedent's estate.

(5) The executor filed an inventory and appraisement of decedent's estate, showing assets, all of which were personal property, of $361,407.25.

(6) The following accounts listed on the inventory were individual retirement accounts (IRAs), naming Aurora C. Harty as the primary beneficiary:

| | |
|---|---|
| Fidelity Puritan Fund | |
| Account 004-0260925979 | $46,004.40 |
| Vanguard Group | |
| Account 979843463-3 | 2,387.84 |
| Oppenheimer High Yield Fund | |
| Account 2800652157 | 18,600.00 |
| Guarantee First Trust | |
| Account 00-3341-3 | 60,000.00 |

(7) In addition to the assets set forth in the inventory, decedent owned certain real estate located at 62 Upland Road, Levittown, Bucks County, Pa., by the entireties with his widow, Aurora Hardy.

(8) Decedent also owned joint accounts with his widow in the following approximate amounts:

| | |
|---|---|
| RCA Federal Credit Union | $ 108 |
| Home Unity Savings & Loan | 1,000 |
| Vanguard (IRA) | 200 |

(9) Decedent's will, which was admitted to probate, was dated September 20, 1982 and contained, in pertinent part, the following:

*"Second: Specific Bequests and Devises —*

"(A) I give all of my tangible personal property, including any automobiles, together with all insurance on such property, to my wife, Aurora C. Harty, if she survives me by 30 days; otherwise, I give such property to such of my children as survive both my wife and myself to be divided among them as they shall agree, my executor to represent children under the age of 21 years in such division. Should there be no agreement, such property shall be divided among them as my executor, in its sole discretion, shall determine. Any of such property to which a child under the age of 21 years thus becomes entitled may be delivered, without bond, to the person taking care of such child at such time as my executor, in its sole discretion, shall determine, and the receipt of such person shall be a complete release of my executor. Any of such property to which a child under the age of 21 years would become entitled and which my executor thinks unsuitable for such child's use may be sold and the proceeds thereof added to my residuary estate.

*"Third: Dispositive Provisions —*

"If my wife survives me (and for the purpose of this article she shall be deemed to have survived me if the order of death of my wife and myself cannot be established by proof) I give, devise and bequeath the entire residue of my estate to the trustee hereinafter named to administer as follows:

"(A) Commencing from the date of death, and during the lifetime of my said wife —

"(a) All of the net income therefrom shall be paid to her in quarterly or other convenient installments, but at least annually, and so much of the principal as she may from time to time, or at any time, request in writing.

"(b) Trustee may pay to or apply for her use so much of the principal of this trust as trustee may in its discretion deem proper for her welfare, comfort, health and support.

"(B) Upon the death of my said wife, trustee shall, after distributing the sum of $5,000 to my mother-in-law, Aurora Grande, if she survives, continue in trust any remaining principal together with all income accrued and unpaid, to the date of her death for the benefit of my son, Christopher Harty, during his lifetime, and all income and so much principal thereof as my trustee in its discretion may from time to time deem proper for the health, maintenance and support of my said son.

"(C) Upon the death of my son, Christopher, any remaining principal shall be paid to my son, William Harty, or in the event he does not survive, to the persons who would be entitled to inherit from me under the intestate laws of Pennsylvania then in existence as if I had then died intestate, unmarried and without issue.

"(D) My son, Richard Harty, is not herein provided for because of any lack of affection for him, but rather because he has been provided for during my lifetime."

(10) Decedent's will contained no direction for the disposition of the residue of the estate in the event Aurora C. Harty failed to survive the decedent.

(11) The decedent executed an indenture of trust on April 27, 1970 to create a trust which was to hold

certain life insurance policies payable to the trustee of the trust as primary or contingent beneficiary and any additional inter vivos transfers made by decedent. The trust income and principal was payable to decedent at his discretion during his lifetime. The trust instrument contained the following provisions, in pertinent part, to take effect upon decedent's death:

"*Second: Dispositive Provisions at my Death* —

"If my wife, Aurora C. Harty, survives me, trustee shall apportion all assets in or becoming a part hereof between two separate trusts to be known as Trust 'A' and Trust 'B,' such apportionment being by fractional shares which shall be determined upon the basis of the final Federal Estate Tax values. In the distribution of residue to said Trust 'A' and Trust 'B' any fluctuation in the value thereof pending such distribution, shall be equitably and ratably apportioned.

"(A) *Marital Deduction Trust* — Trust 'A' shall comprise the fractional share of all of said assets, undiminished by any estate or inheritance taxes, which when added to all property passing to my wife otherwise than herein which qualifies for the marital deduction, will obtain for my estate the maximum marital deduction permitted under the applicable provision of the Federal Internal Revenue Code. The assets of said Trust 'A' shall be administered as follows:

"(1) Commencing with the date of my death and thereafter during the lifetime of my said wife —

"(a) All the net income shall be paid to my said wife in quarterly or other convenient installments.

"(b) Trustee may from time to time pay to or apply for the use of my said wife so much of the principal

of the trust as my trustee may in its discretion deem proper for her welfare, comfort, maintenance and support.

"(2) Upon the death of my said wife, trustee shall pay over the then remaining principal, together with all income accrued and unpaid to the date of her death.

"(a) To such person or persons including her estate, in such proportions in such manner and for such estates as my wife shall appoint by will or deed, expressly referring to the power of appointment herein given, my intention being that such general power may be exercised by my wife alone and in all events; or,

"(b) In default of such appointment, trustee shall add the same to Trust 'B' to be held as though originally forming a part thereof, after first paying or providing for the payment from the remaining assets of Trust 'A' such portion of the Federal Estate Tax and Pennsylvania Estate Tax, including penalties and interest thereon, as may be imposed on my wife's estate by reason of the inclusion of the principal of Trust 'A' in her gross estate subject to Federal or Pennsylvania Estate Tax.

"(3) Notwithstanding any other provisions herein —

"(a) If the assets of the marital deduction Trust 'A' shall at any time have a market value of less than $10,000, trustee shall pay over and deliver the same free and clear of all trusts to my wife, absolute.

"(b) *If my said wife shall not survive me, or if my total estate subject to Federal Estate Tax shall not be sufficient to require the filing of a Federal Estate Tax return, then in lieu of all the other provision of this Article Second A, the assets which otherwise would form a part of this Trust 'A' shall be made a part of and held as Trust 'B.'*

"(c) Trustee of Trust 'A' shall not have any rights,

powers, duties, authority, privileges, immunities or discretion given by any provision of this deed, if or to the extent that such would disqualify Trust 'A' for the maximum marital deduction.

"(d) If any property which forms a part of Trust 'A' shall be or become unproductive, my said wife may require trustee to make it productive or to convert it within a reasonable time to property which is currently productive of income consistent with the value of such corpus.

"(B) *Non-Marital Trust* — Trust 'B' shall comprise the remaining fractional share of all said assets, together with any interest in profit-sharing or pension plans, and shall be administered as follows:

"(1) During the lifetime of my said wife —

"(a) All of the net income shall be paid to my said wife in quarterly or other convenient installments.

"(b) As much of the principal as my trustee in its discretion may from time to time deem proper for the health, maintenance, and support of my said wife, my mother-in-law, Aurora Grande, or the health, education, support and maintenance of my children shall be paid to or applied directly for them or said children, provided, however, that no part of the principal of this Trust 'B' shall be used for my said wife's personal maintenance and support until the principal of Trust 'A' is first exhausted, and, provided further, that the use of principal hereunder for the education of my children shall be subordinate to the welfare of my said wife and mother-in-law. Trustee shall be completely exonerated in the exercise of its discretion in this regard.

"(2) *Upon the death of my said wife, or upon my death if she does not survive me,* and providing my mother-in-law, Aurora Grande, is deceased, the then remaining principal of Trust 'B' shall be continued in trust, the income from which shall be

accumulated and added to the principal, with power and authority in my trustee to use combined funds in its sole and absolute discretion for all of my children then living and my said mother-in-law, if she is living, until the youngest of such children attain the age of 21, and my mother-in-law is deceased.

"(a) Until the youngest of my children shall have attained the age of 21 years, any income or principal which may have been used by my trustee for the welfare, support, education, or any emergency of any children who shall not have attained the age of 21 years, shall not be charged against the interest of such child, provided, however, that if any principal shall be used for the benefit of any such child after he or she shall have attained the age of 21 years, then the principal so used shall be charged against the interest of such child at the time for distribution of the principal of the trust estate." (emphasis supplied)

(12) The indenture of trust contained no other provisions regarding disposition should Aurora C. Harty fail to survive the decedent.

(13) The indenture of trust named First Pennsylvania Banking and Trust Company (now First Pennsylvania Bank, N.A.) as trustee.

(14) On April 26, 1977 decedent executed an amendment to the indenture of trust, which stated in pertinent part:

"*First:* I do hereby revoke Item Second B. (*Non-Marital Trust*) in its entirety and in lieu thereof and in substitution therefore, provide as follows:

"*Second B. Non-Marital Trust* — Trust 'B' shall comprise the remaining fractional share of all of said assets together with any interest in profit-sharing or pension plans, and shall be administered as follows:

"1. Five thousand dollars of Trust 'B' shall be paid and distributed as soon as practicable to my mother-in-law, Aurora Grande, if living.

"2. The remaining balance of Trust 'B' shall be held in trust and thereafter:

"(a) During the lifetime of my wife, Aurora C. Harty:

"(1) All of the net income shall be paid to my said wife in quarterly or other convenient installments;

"(2) As much of the principal as my trustee, in its sole discretion, may from time to time deem proper for the health, maintenance and support of my said wife or the health, education, support and maintenance of my children, Christopher Harty and William E. Harty Jr., shall be paid to or applied directly for her or said children, provided, however, that no part of the principal of this Trust 'B' shall be used for my said wife's personal maintenance and support until the principal of Trust 'A' is first exhausted.

"(3) *Upon the death of my said wife or upon my death if she does not survive me,* the then-remaining principal of Trust 'B' shall be continued in trust for the benefit of my son, Christopher Harty, and thereafter:

"(a) All of the net income shall be paid to such son in quarterly or other convenient installments; and

"(b) As much of the principal as trustee may, from time to time, deem proper for such son's support, welfare, education, or any emergency, shall be paid to such son or applied directly for his benefit.

"(c) Upon the death of my son, Christopher Harty, the remaining balance of the trust shall be paid to my son, William E. Harty Jr., or to his issue; and if he should be deceased without leaving issue to survive, then to my son, Richard Harty, if living; and if deceased, then to the persons who would be

entitled to inherit from me under the Intestate Law of Pennsylvania, as if I had then died intestate." (emphasis supplied)

(15) At the time of his death, the decedent owned insurance policies on his life with New York Life Insurance Company and Metropolitan Life Insurance Company, naming the trustee under the indenture of trust as primary beneficiary.

(16) On November 18, 1987, decedent's widow, Aurora C. Harty, entered a plea of guilty to the charge of voluntary manslaughter stemming from decedent's death and was duly sentenced.

(17) William Edward Harty Jr. and Christopher Harty do not wish the trusts created by the indenture of trust to be funded.

(18) Aurora C. Harty desires that the real property owned by decedent and her be maintained in kind and not sold.

## DISCUSSION

The Slayer's Act, 20 Pa.C.S. §8801 et seq., provides that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent. . . . " 20 Pa.C.S. §8802. The first issue before us, therefore, is whether Aurora C. Harty was a slayer of her husband, the decedent.

A slayer is defined as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." Mrs. Harty was convicted of voluntary manslaughter, set forth at 18 Pa.C.S. §2503 as:

"(a) *General rule* — A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

"(1) the individual killed; or

"(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

"(b) *Unreasonable belief killing justifiable* — A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

"(c) *Grading* — Voluntary manslaughter is a felony of the second degree."

Our courts have held that the specific intent to kill is a necessary element of voluntary manslaughter. *Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979); *Commonwealth v. Mason,* 474 Pa. 308, 378 A.2d 807 (1977). Voluntary manslaughter contemplates an intentional or voluntary act on the part of the defendant. *Commonwealth v. Mason, supra.* The legislature has mandated that the Slayer's Act be construed broadly. 20 Pa.C.S. §8815. Following these guidelines, we conclude that Mrs. Harty is a slayer as defined by the Slayer's Act. She intentionally or willfully killed the decedent in an unlawful fashion. Her conviction of voluntary manslaughter is a conclusive bar of her right to take any portion of decedent's estate. *Craig Estate,* 27 Pa. Fiduc. 102 (1976). See *Kravitz Estate,* 418 Pa. 319, 211 A.2d 443 (1965).

The Slayer's Act directs the distribution of the decedent's assets that would otherwise have passed to Mrs. Harty, the slayer. "Property which would have passed to or for the benefit of the slayer by devise or legacy from the decedent shall be distributed as if he had predeceased the decedent." 20

Pa.C.S. §8804. One-half of any property held by the slayer and the decedent as tenants by the entirety shall pass to the decedent's estate, and the other half shall be held by the slayer during his life, subject to pass upon his death to the estate of the decedent. 20 Pa.C.S. §8805. The slayer shall be deemed to have predeceased the decedent with respect to any contingent remainder or future interest held by the slayer which was subject to vest upon the decedent's death. 20 Pa.C.S. §8809. Insurance proceeds payable to the slayer as beneficiary of any policy or certificate of insurance on the life of the decedent shall be paid to the estate of the decedent unless an alternative beneficiary is designated. 20 Pa.C.S. §8811(a).

When we apply these rules to Mr. Harty's estate, we see initially that, pursuant to 20 Pa.C.S. §8805, one-half of the joint accounts belongs to the estate. The other half shall be held by Mrs. Harty during her lifetime, and she may receive the income therefrom. The principal shall be maintained intact and shall pass to Mr. Harty's estate upon Mrs. Harty's death. We direct that these funds be placed in a restricted account with only the income allowed to be withdrawn by Mrs. Harty.

Given the broad construction accorded the Slayer's Act, we will treat the IRAs like insurance policies under 20 Pa.C.S. §8811. These proceeds are the estate's.

Pursuant to 20 Pa.C.S. §8809, the insurance proceeds payable to First Pennsylvania Bank, N.A. as trustee under the indenture of trust and its amendment shall be administered by said trustee in accordance with the provisions of Trust "B" as if Aurora C. Harty had predeceased the decedent. We cannot accept the executor's position that the trust

cannot come into being if Mrs. Harty is treated as if she died before the decedent.

In interpreting a trust instrument, the intent of the settlor is paramount and must prevail if it is not contrary to law. *Estate of Taylor*, 361 Pa. Super. 395, 522 A.2d 641 (1987). The trust writing itself is the best and controlling evidence of the settlor's intent. *In re Girard Trust Corn Exchange Bank*, 418 Pa. 112, 208 A.2d 857 (1965). Although the language and structure of the trust documents are not as clear as they might be, it is apparent upon reading them as a whole that the decedent intended the establishment and funding of Trust "B" for the benefit of his mother-in-law and his sons if Aurora C. Harty did not survive him. Article Second A.3(b) of the original indenture states that "[i]f my said wife shall not survive me, . . . then in lieu of all the other provisions of this Article Second A, the assets which otherwise would form a part of this Trust 'A' shall be made a part of and held as Trust 'B.' " Article Second B.2.(a)(3) of the amendment specifies that "[u]pon the death of my said wife or upon my death if she does not survive me, the then remaining principal of Trust 'B' shall be continued in trust for the benefit of my son, Christopher Harty,. . . . "

We recognize the executor's argument that the first sentence of Article Second seems to condition the formation of the trusts on the survival of Mrs. Harty. This interpretation, however, directly contradicts the provisions recited above. A reading of the documents in their entirety compels us to resolve this ambiguity in favor of the foundation of Trust "B" as intended by the decedent. Cf. *Richley Estate*, 394 Pa. 188, 146 A.2d 281 (1958).* While we

---

* The court in *Richley Estate* reconciled conflicting provisions of a will by ascertaining the testator's intent from a reading of the entire

sympathize with the beneficiaries, their wishes are irrelevant in this matter. The insurance proceeds designated for the trust shall be placed in trust with First Pennsylvania Bank, N.A. Five thousand dollars shall be distributed immediately to Aurora Grande, or to her estate if she survived decedent, and the remainder shall be held in trust in accordance with Article Second B.2.(a)(3) of the indenture of trust as amended.

We reach a different result regarding decedent's testamentary estate under 20 Pa.C.S. §8804. Although we suspect that decedent meant for all his assets to pour into the same trust if Mrs. Harty predeceased him, the dispositive trust provisions of the will do not contemplate her prior death. The tangible personal property passes to decedent's children by Article Second A. The residue, no provision being made in the event of Mrs. Harty's failure to survive the decedent, must pass according to the statutes of descent and distribution. The law looks with disfavor upon a finding of intestacy and presumes that the testator intended to die testate as to all his property, but this presumption is rebuttable. *Bowman v. Brown*, 394 Pa. 647, 149 A.2d 56 (1959). The presumption against intestacy does not authorize the courts to interpolate provisions not contained in a will in order to avoid an intestacy. *In re English's Estate*, 242 Pa. 545, 89 Atl. 680 (1914). Unfortunately, no doubt by mistake, the residuary clause of decedent's will completely fails to address the situation where Mrs. Harty does not survive, and all but the tangible personal property must be distributed by the laws of intestate succession.

will. The court also acknowledged the canon of construction that, if two conflicting paragraphs cannot be construed together, the latter prevails. This canon applies here as well.

The last question is the treatment of the entireties real estate. 20 Pa.C.S. §8805 requires that the estate take one-half of the real estate and that Mrs. Harty hold the other half, which passes to the estate upon her death. The executor contends that, in satisfaction of section 8805, he may sell the real estate, giving Mrs. Harty a life interest in, or the income from, one-half of the proceeds of sale. Mrs. Harty asks that the real estate remain intact. Unless the parties agree or obtain partition, we cannot order the sale of the property.

*Larendon Estate,* 439 Pa. 535, 266 A.2d 763 (1970) influences our decision. There the court analyzed the earlier version of the Slayer's Act and concentrated on the joint property section, which stated:

"One-half of any property held by the slayer and the decedent as joint tenants, joint owners or joint obligees shall pass upon the death of the decedent to his estate, and the other half shall pass to his estate upon the death of the slayer, unless the slayer obtains a separation or severance of the property or a decree granting partition." 20 P.S. §3446(a). This is identical to the current 20 Pa.C.S. §8806.

Entireties property passes the same way pursuant to section 8805, with the exception that section 8805 makes no reference to severance or partition. The *Larendon* court held that, at the decedent's death, the slayer retained an undivided one-half interest in the joint property (together with all normal incidents thereto) that he had previously enjoyed, except that passage of the remaining one-half interest to the estate of the decedent effectively extinguished the slayer's right of survivorship. *Larendon Estate, supra.* The court reasoned that the purpose of the Slayer's Act is to prevent the slayer's self-enrichment without necessarily dimin-

ishing the property rights possessed by the slayer immediately before the slaying. *Id.* Following this reasoning, the decedent's estate, and Mrs. Harty now hold the real estate in a unique type of joint tenancy. Each possesses an undivided one-half interest in the property, and Mrs. Harty's interest devolves to the estate upon her death. As in any joint tenancy, the property cannot be sold without the permission of both tenants. Either tenant may, however, seek partition, with the caveat that, after partition, the principal of Mrs. Harty's share must still pass to the estate when she dies. We do not believe that section 8805 limits the ordinary right to partition incident to a joint tenancy. See *Larendon Estate, supra.*

We add that the estate and Mrs. Harty must share the expenses and liabilities of the real property, too. Because of this and other complexities of this estate, we recommend that the executor file a schedule of distribution when this estate is ultimately settled.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction over this estate and the parties in interest.

(2) Aurora C. Harty was a slayer, as that term is defined by 20 Pa.C.S. §8801, of her husband, the decedent, William E. Harty, and, as such, she may acquire no property or benefit as the result of his death.

(3) One-half of the funds in the accounts at RCA Federal Credit Union, Home Unity Savings & Loan and Vanguard belongs to the decedent's estate. The other half may be held by Aurora C. Harty, who may receive only the interest during her lifetime, and passes to the decedent's estate upon her death.

(4) The funds of the following individual retire-

ment accounts are assets of the decedent's estate: Fidelity Puritan Fund Account 004-0260925979; Vanguard Group Account 979843463-3; Oppenheimer High Yield Fund Account 2800652157 and Guarantee First Trust Account 00-3341-3.

(5) The proceeds of the life insurance policies on decedent's life with New York Life Insurance Company and Metropolitan Life Insurance Company are payable to First Pennsylvania Bank, N.A. as trustee and are to be administered by the trustee pursuant to Article Second B and the following articles of the indenture of trust dated April 27, 1970 and amended April 26, 1977.

(6) Decedent's tangible personal property is distributable to his sons pursuant to Article Second A of the decedent's will dated September 20, 1982.

(7) The residue of decedent's testamentary estate is distributable to his heirs at law.

(8) The real estate located at 62 Upland Road, Levittown, Bucks County, Pa., is held jointly by decedent's estate and Aurora C. Harty, each possessing an undivided one-half interest in the property. Decedent's estate and Aurora C. Harty are each responsible for one-half of the expenses and the liabilities associated with the property. The property may not be sold or otherwise disposed without the permission of both decedent's estate and Aurora C. Harty. Either decedent's estate or Aurora C. Harty may, in appropriate circumstances, seek separation, severance or partition of the property.

## DECREE NISI

And now, September 6, 1989, it is hereby ordered and decreed that Aurora C. Harty shall acquire no property or receive no benefit as the result of her slaying of William E. Harty. William Edward Harty

Jr., the executor of the estate of William E. Harty, shall receive, for credit to the estate, one-half of the funds in the accounts at RCA Federal Credit Union, Home Unity Savings & Loan and Vanguard formerly held by William E. Harty and Aurora C. Harty as tenants by the entireties. The executor shall deposit the other one-half of said accounts in a federally insured institution in an account in the name of Aurora C. Harty, captioned "principal to be withdrawn only after death of Aurora C. Harty by the estate of William E. Harty." The executor shall receive, for credit to the estate, the funds from the following individual retirement accounts in the name of William E. Harty:

Fidelity Puritan Account 004-0260925979
Vanguard Group Account 979843463-3
Oppenheimer High Yield Fund Account 2800652157
Guarantee First Trust Account 00-3341-3

First Pennsylvania Bank, N.A. shall receive the proceeds of the life insurance policies on the life of William E. Harty with New Life Insurance Company and Metropolitan Life Insurance Company and shall hold the proceeds as trustee under the indenture of trust of William E. Harty dated April 27, 1970 and amended April 26, 1977. The sum of $5,000 shall be paid by the trustee from said funds as soon as practicable to Aurora Grande or to her estate if she was living at the time of William E. Harty's death. The trustee shall hold the remainder of the funds in trust and administer them pursuant to Article Second B.2.(a)(3) and the subsequent provisions of the indenture of trust as amended. The executor shall distribute the tangible personal property of William E. Harty to the sons of William E. Harty pursuant to Article Second A of William E. Harty's will dated September 20, 1982. The executor shall distribute

the remaining assets of William E. Harty to the heirs at law of William E. Harty. The executor, on behalf of the estate of William E. Harty, and Aurora C. Harty each possess an undivided one-half interest in the real property located at 62 Upland Road, Levittown, Bucks County, Pa. The estate and Aurora C. Harty shall each be liable for one-half of the expenses and liabilities of said property accruing since February 12, 1987. The property shall not be sold, leased or otherwise disposed or encumbered without the agreement of both the executor, on behalf of the estate, and Aurora C. Harty. Either the executor, on behalf of the estate, or Aurora C. Harty may, if appropriate, seek separation, severance or partition of the property. Upon the death of Aurora C. Harty, her principal interest in the property, whether or not severed, shall pass to the estate.

If no exceptions are filed within 10 days of the date hereof, the clerk is directed to enter this decree nisi as a final decree upon praecipe.